UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ASHLEY GILCHRIST,                                                    Civil Action No.


                                    Plaintiff,


        -against-                                                    **COMPLAINT**

THE NEW YORK AND PRESBYTERIAN HOSPITAL,
NEWYORK-PRESBYTERIAN GLOBAL SERVICES, LLC,
NEWYORK-PRESBYTERIAN HEALTHCARE SYSTEM
IPA, LLC, NEWYORK-PRESBYTERIAN PHYSICIAN
SERVICES ORGANIZATION, LLC,
NEWYORK-PRESBYTERIAN PROVIDER NETWORK
RESOURCES, LLC, NEWYORK-PRESBYTERIAN
LAWRENCE HOSPITAL,
CHRISTOPHER GARAFOLA,
LISA ORONZIO,
ASSUNTA BRUNO,
RACHEL NEGRON, and
STEVEN J. CORWIN,

                                                                    Plaintiff Demands a Trial
                                                                    By Jury

                                    Defendants.
------------------------------------------------------------------------X


        Plaintiff, ASHLEY GILCHRIST, (hereinafter referred to as "Plaintiff" or

"GILCHRIST"), by and through Plaintiff's attorneys, **DEREK SMITH LAW GROUP, PLLC,**

as and for Plaintiff's Complaint in this action against the Defendants, (hereinafter collectively

referred to as "Defendants"), respectfully alleges as follows upon information and belief:


                            **NATURE OF THE CLAIMS**


1.  Plaintiff GILCHRIST complains pursuant to Title VII of the Civil Rights Act of 1964, as

    codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil

    Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Americans with Disabilities

Act of 1990 ("ADA") as amended, the laws of the State of New York, and the

Administrative Code of the City of New York, based upon the supplemental jurisdiction

of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966),

and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress

the injuries Plaintiff has suffered as a result of, *inter alia*, disability discrimination

together with being subjected to sexual harassment, hostile work environment, retaliation

and unlawful termination by Defendants.

## JURISDICTION AND VENUE

2. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and the ADA. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. Plaintiff filed a Charge with the Equal Employment Opportunity Commission on October 18, 2018.

6. Plaintiff received a Notice of Right to Sue letter on March 1, 2019.

7. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

8. Venue is proper in that the events arose in New York County within the Southern District of New York.

## PARTIES

8. Plaintiff GILCHRIST is an individual female who suffers from the medical conditions of irritable bowel syndrome (hereinafter referred to as "IBS"), anxiety, and depression, residing in the State of New York, Rockland County.

9. At all times material, Defendants THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter referred to as "Defendant NYPH" and/or "NYPH"), was and is a Domestic Not-for-profit Corporation duly existing by the virtue and law of the State of New York that does business in the State of New York.

10. At all times material, Defendant NEWYORK-PRESBYTERIAN GLOBAL SERVICES, LLC, (hereinafter referred to as "Defendant NYPGS" and/or "NYPGS"), was and is a Foreign Limited Liability Company, duly existing by the virtue and laws of the State of Delaware that does business in the State of New York.

11. At all times material, Defendant NEWYORK-PRESBYTERIAN HEALTHCARE SYSTEM IPA, LLC, (hereinafter referred to as "Defendant NYPHS" and/or "NYPHS"), was and is a Domestic Limited Liability Company, duly existing by the virtue of the laws of the State of New York that does business in the State of New York.

12. At all times material, Defendant NEWYORK-PRESBYTERIAN PHYSICIAN SERVICES ORGANIZATION, LLC, (hereinafter referred to as "Defendant NYPPS" or "NYPPS"), was and is a Domestic Limited Liability Company, duly existing by the virtue of the laws of the State of New York that does business in the State of New York.

13. At all times material, Defendant NEWYORK-PRESBYTERIAN PROVIDER NETWORK RESOURCES, LLC, (hereinafter referred to as "Defendant NYPPNR" or "NYPPNR"), was and is a Domestic Limited Liability Company, duly existing by the virtue of the laws of the State of New York that does business in the State of New York.

14. At all times material, Defendant NEWYORK-PRESBYTERIAN LAWRENCE HOSPITAL, (hereinafter referred to as "Defendant NYPLH" or "NYPLH"), was and is a general hospital located in Bronxville, New York.

15. At all times material, Defendants NYPH, NYPGS, NYPHS, NYPPS, NYPNNR and NYPLH, (hereinafter collectively referred to as "Corporate Defendants"), were joint employers of Plaintiff.

16. At all times material, Plaintiff was an "employee" of Corporate Defendants within the meaning of the aforementioned statutes.

17. At all times material, Corporate Defendants acted by and through their employees, agents, and servants who were acting in the scope and course of employment, agency and servitude.

18. At all times relevant to this Complaint after May 26, 2018, Plaintiff was and is a former employee of Corporate Defendants.

19. Upon information and belief, at all times material, Corporate Defendants met and meet the definition of an "employer" under all applicable state and local statutes.

20. At all times material, Defendant CHRISTOPHER GARAFOLA, (hereinafter referred to as "Defendant GARAFOLA" and/or "GARAFOLA") was, and is, a pharmacist for Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708. GARAFOLA held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties.

21. At all times material, Defendant LISA ORONZIO (hereinafter referred to as "Defendant ORONZIO" and/or "ORONZIO") was, and is, the Director of Pharmacy Services for Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708. ORONZIO held supervisory authority over

Plaintiff, controlling many aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

22. As Plaintiff's supervisor, ORONZIO has also aided and abetted the unlawful conduct described herein.

23. At all times material, Defendant ASSUNTA BRUNO (hereinafter referred to as "Defendant BRUNO" and/or "BRUNO") was the Director of Human Resources for Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708. BRUNO held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties, including the power to hire and fire Plaintiff.

24. As Plaintiff's supervisor, BRUNO has also aided and abetted the unlawful conduct described herein.

25. At all times material, Defendant RACHEL NEGRON (hereinafter referred to as "NEGRON"), was and is the Vice President of Human Resources for Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708. NEGRON held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties. NEGRON held the power to hire and fire Plaintiff.

26. As Plaintiff's supervisor, NEGRON has also aided and abetted the unlawful conduct described herein.

27. At all times material, Defendant STEVEN J. CORWIN, MD (hereinafter referred to as "Defendant CORWIN" and/or "CORWIN") was, and is, the President and Chief Executive Officer for Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708. CORWIN held

supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties. CORWIN held the power to hire and fire Plaintiff.

28. As Plaintiff's supervisor, CORWIN has also aided and abetted the unlawful conduct described herein.

## STATEMENT OF FACTS

29. On or about December 28, 2017, Plaintiff interviewed for a Pharmacy Assistant position with Corporate Defendants in their NewYork-Presbyterian Lawrence Hospital located at 55 Palmer Avenue, Bronxville, NY 10708.

30. On or about January 19, 2018, pursuant to her employment application, Plaintiff spoke with Corporate Defendants' Clinical Nurse Manager SUSANNE KONDRATOWICZ (hereinafter referred to as "KONDRATOWICZ") and informed her that Plaintiff suffers from IBS, anxiety and depression.

31. Plaintiff subsequently supplied Corporate Defendants with evidence of these medical conditions via e-mail, thereby putting Defendants on notice of her disabilities.

32. As a result of Plaintiff's IBS, she requires use of the bathroom frequently and urgently, at irregular points during the day.

33. As a reasonable accommodation under the ADA, Plaintiff was allowed to take multiple fifteen (15) minute breaks throughout her employment, in particular to use the restroom due to her IBS.

34. On or about January 23, 2018, Plaintiff began her employment with Corporate Defendants as a Pharmacy Assistant.

35. In or around April 2018, Defendant GARAFOLA made numerous inappropriate sexual comments and gestures to Plaintiff.

36. Specifically, GARAFOLA asked Plaintiff if she was a "**SUGAR BABY**" and asked if she wanted to be "**[GARAFOLA'S] SUGAR BABY.**"

37. GARAFOLA then took his fingers and, without consent or invitation, brushed Plaintiff's hair behind her ear, in the presence and view of another of Corporate Defendants' employees, Pharmacy Assistant AMBER MONTILLA (hereinafter referred to as "MONTILLA").

38. Subsequently, in or around April of 2018, Plaintiff wore a black dress and heels. GARAFOLA loudly and publicly made inappropriate, sexual comments to Plaintiff, including exclaiming, "**WOW!**" and "**OH MY GOD**!" while staring intently at Plaintiff's body.

39. GARAFOLA did this repeatedly in the presence and full view of Defendant ORONZIO and Plaintiff's other co-workers.

40. Plaintiff was dehumanized and publicly humiliated by GARAFOLA's sexually harassing conduct.

41. After GARAFOLA made a slew of sexual comments about Plaintiff without interruption, ORONZIO interjected and asked GARAFOLA to stop.

42. However, despite ORONZIO's request, GARAFOLA continued sexually harassing Plaintiff.

43. GARAFOLA's harassment continued and ORONZIO asked him to stop yet again.

44. Despite the fact that ORONZIO was both Plaintiff and GARAFOLA's supervisor, ORONZIO failed to take any corrective action.

45. Upon information and belief, no actions were ever taken by any of Corporate Defendants' supervisors or managers to correct GARAFOLA's sexually discriminatory conduct towards Plaintiff and/or other female employees.

46. Upon information and belief, Defendants never took any substantive corrective actions to address GARAFOLA's sexual discrimination towards Plaintiff.

47. As a result of ORONZIO's endorsement of GARAFOLA's sexually harassing behavior, Plaintiff felt uncomfortable with and discouraged from reporting future unlawful conduct.

48. On or about April 23, 2018, Plaintiff successfully completed her probationary period.

49. On or about April 26, 2018, in compliance with Corporate Defendants' policies, Plaintiff notified Corporate Defendants' nurse at Workforce Health and Safety, MELISSA [LAST NAME UNKNOWN] (hereinafter referred to as "MELISSA"), that she would be leaving work early for the purpose of attending a doctor's appointment that afternoon.

50. MELISSA stated that she would email ORONZIO regarding Plaintiff's scheduled doctor's appointment.

51. Plaintiff, as indicated to MELISSA, left work early and duly attended the scheduled doctor's appointment.

52. On or about May 1, 2018, Plaintiff Defendant SUE BRUNO letting her know that she was ill and had still not received her upcoming schedule. Defendant BRUNO never responded to Plaintiff.

53. On or about May 2, 2018, Plaintiff was told by Corporate Defendants' employees SAMIR REHMAN (hereinafter referred to as "REHMAN") and MARIE DIMICCO (hereinafter referred to as DIMICCO") that Plaintiff would no longer be allowed to take a fifteen (15) minute break in the morning, which was a reasonable accommodation for

Plaintiff's medical condition.  Denying this accommodation would aggravate Plaintiff's medical condition and symptoms.

54. On or about May 3, 2018, Plaintiff discovered that her paycheck was short twenty-two and a half (22.5) hours despite being reassured she would receive paid sick-leave.

55. Plaintiff called payroll and was informed that ORONZIO sent them an email stating that Plaintiff did not pass the probationary period, and therefore was not entitled to paid sick-leave.  Plaintiff had successfully completed her probationary period on or about April 23, 2018, some two (2) weeks prior to ORONZIO's email.

56. Upon information and belief, ORONZIO contacted an employee in Corporate Defendants' payroll department and deliberately, maliciously and unjustifiably misinformed them as to Plaintiff's employment status and consequent entitlement to sick-leave.

57. Plaintiff went to Corporate Defendants' Human Resources Department and spoke with Corporate Defendants' employee, DEBORAH ALICEA (hereinafter referred to as "ALICEA").

58. Plaintiff informed ALICEA that Plaintiff had been suffering illness related to her medical conditions, and complained that she was being denied the reasonable accommodation and sick-pay by ORONZIO and Corporate Defendants.

59. ALICEA scheduled an appointment for Plaintiff to meet with BRUNO on May 10, 2018.

60. Later that same day, Plaintiff sent an email to ALICEA and stated, "Marie was also present during a meeting yesterday afternoon at 2:50 p.m. where Samir informed me that I am not permitted to take my 15 minute break before 8am.  Again."

61. On or about May 4, 2018, DIMICCO yelled at Plaintiff, "**I CAN'T FUCKING DO THIS SHIT**" before engaging in a violent tantrum that included slamming and throwing items around the pharmacy in the presence of Plaintiff.

62. As a result of DIMICCO's tantrum and, in light of the unabated harassment and increasingly hostile work environment to which she was being subjected to by Defendants, Plaintiff made another complaint to ALICEA and asked if she could reschedule the meeting with BRUNO to earlier in the week.

63. Plaintiff's meeting with BRUNO was rescheduled to May 8, 2018. ALICEA recommended that Plaintiff speak directly to ORONZIO about the issues with management.

64. GILCHRIST returned to the Pharmacy Department to discuss her accommodations and outstanding payment for her paid sick days with ORONZIO.

65. However, ORONZIO used the meeting as an opportunity to further her campaign of harassment and misconduct against Plaintiff. Specifically, ORONZIO threated to prepare and submit bad-faith disciplinary write-ups against Plaintiff for false allegations of insubordination and dress code violations.

66. Plaintiff then went to Human Resources to report the incident to ALICEA and Corporate Defendants' employee, Human Resources Recruiter MELYNA PEREZ (hereinafter referred to as "PEREZ").

67. Plaintiff told ALICEA and PEREZ that Plaintiff was uncomfortable returning to work with ORONZIO.

68. ALICEA and PEREZ directed Plaintiff to call out sick on the following two (2) days in order to avoid contact with ORONZIO before speaking with BRUNO.

69. In compliance with ALICEA and PEREZ's advice, on or about May 7, 2018, Plaintiff called out sick.

70. On or about May 8, 2018, Plaintiff received a phone call from ORONZIO. ORONZIO stated that, according to Defendant NEGRON, Plaintiff had resigned.

71. Plaintiff responded that she had not, in fact, resigned.

72. Later that same day, Plaintiff met with BRUNO to address Plaintiff's complaints of discrimination.

73. Plaintiff was immediately met with hostility and aggression from BRUNO. Specifically, Bruno, *inter alia,* called Plaintiff "**A CHICK**" in a sarcastic and derogatory tone and openly laughed at Plaintiff for trying to contact Corporate Defendants' Human Resources, but mistakenly directing her correspondence to the wrong contact in the Human Resources Department.

74. BRUNO told Plaintiff that whether Plaintiff, "**RESIGN[ED] OR THEY TERMINATE YOU[PLAINTIFF], YOU[PLAINTIFF] WILL NOT BE RETURNING TO THE PHARMACY DEPARTMENT**."

75. BRUNO proceeded to admit to Plaintiff, in the presence and company of Plaintiff's union delegate, that BRUNO never read any of Plaintiff's emails because she was "**BUSY WITH OTHER THINGS.**"

76. Plaintiff immediately complained to BRUNO that she acted negligently and unprofessionally and that Plaintiff intended to file a lawsuit because of the discrimination and retaliation she was forced to endure.

77. Plaintiff also complained to BRUNO about the sexual harassment Plaintiff was forced to endure at the hands of GARAFOLA.

78. In response, BRUNO stated that Plaintiff would be paid for all of her outstanding sick-leave taken for Plaintiff's medical conditions. BRUNO also stated that she would call Plaintiff on May 10, 2018, with a resolution.

79. However, despite her assurances, BRUNO did not call or otherwise attempt to contact Plaintiff on May 10, 2018.

80. On or about May 11, 2018, Plaintiff received a certified letter from ORONZIO dated **TBC,** stating that Plaintiff had resigned as of May 4, 2018.

81. Plaintiff immediately contacted her union representative to report the resignation that had been imposed upon Plaintiff as a means of further retaliation by Defendants. Plaintiff's union representative indicated that he would email Defendants BRUNO and ORONZIO.

82. BRUNO responded to Plaintiff's union representative and said that ORONZIO sent the letter prematurely, before the meeting between herself and Plaintiff scheduled for May 10, 2018. BRUNO stated that she would call Plaintiff on May 14, 2018.

83. Plaintiff went to Corporate Defendants' security office to have an ID printed and was informed that according to security personnel she no longer worked there.

84. On or about May 14, 2018, BRUNO called Plaintiff and informed Plaintiff that the investigation was still ongoing.

85. On or about May 16, 2018, BRUNO called Plaintiff again to tell Plaintiff that BRUNO needed to speak with two (2) more people regarding what Plaintiff reported.

86. On or about May 18, 2018, BRUNO called Plaintiff and told Plaintiff that she determined that Plaintiff had resigned. Plaintiff told BRUNO that she did not, and that she still did not receive pay for her sick days as a reasonable accommodation under the ADA, as promised.

87. On or about May 26, 2018, Plaintiff sent a certified letter to Defendants ORONZIO, BRUNO, and NEGRON letting them know that she did not resign and that she was a victim of discrimination, harassment, and retaliation.

88. On or about May 18, 2018, Defendants wrongfully terminated Plaintiff because of her sex/gender and disability, as well as in retaliation for having requested a reasonable accommodation under the ADA and for having complained of discrimination.

89. Defendants sexually harassed, discriminated against, and terminated Plaintiff on the basis of Plaintiff's sex and gender, disability and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

90. The above-described conduct demonstrates that the Plaintiff was treated differently because she complained of unlawful conduct.

91. Defendants retaliated against Plaintiff for engaging in protected activity.

92. Upon information and belief, Defendants devised, implemented, and executed a scheme through which they gave disparate, preferential treatment to certain employees, while those Defendants knowingly and intentionally denied equal treatment and benefits to others including Plaintiff.

93. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

94. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

95. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

96. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

97. Plaintiff makes all claims herein under the continuing violations doctrine.

98. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

99. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

100. Plaintiff claims unlawful discharge and also seeks reinstatement.

101. Plaintiff claims alternatively (in the event Defendants Claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII
(AS AGAINST CORPORATE DEFENDANTS)**

102. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

103. Title VII states in relevant part as follows:

(a) Employer practices: It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

104. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Corporate Defendants. Plaintiff complains of Corporate Defendants' violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender or race.

105. Corporate Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of Plaintiff's sex/gender, together with causing a hostile work environment based on the same.

106. Corporate Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

107. Corporate Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(AS AGAINST CORPORATE DEFENDANTS)**

108. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

109. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

110. Corporate Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

111. Corporate Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
## (AS AGAINST CORPORATE DEFENDANTS)

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

114. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."

115. Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

116. Corporate Defendants violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability.

117. Corporate Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
## (AS AGAINST CORPORATE DEFENDANTS)

118. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

120. Corporate Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

121. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

122. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

123. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race, color, and national origin, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

124. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

125. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

126. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

127. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

128. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

129. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

130. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

131. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

132. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

133.  Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

134.  Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

135.  Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

136.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

137.  The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

138.  Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

139.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

140.  Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

141. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

142. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

143. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

144. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

145. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

146. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

147. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

148. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

149. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

150. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

151. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

152. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

153. Defendants violated the section cited herein as set forth.

154. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TWELFTH CAUSE OF ACTION
## FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

155. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

156. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   i. The employee or agent exercised managerial or supervisory responsibility; or

   ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

157. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues so triable.


Date:   May 30, 2019

　　　　　New York, New York

　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　**DEREK SMITH LAW GROUP, PLLC.**

　　　　　　　　　　　　　　　Attorneys for Plaintiff


　　　　　　　　　　　　BY: <u>**/s/Ishan Dave**</u>
　　　　　　　　　　　　　　　Ishan Dave Esq.
　　　　　　　　　　　　　　　1 Pennsylvania Plaza, 49th Floor
　　　　　　　　　　　　　　　New York, New York 10119
　　　　　　　　　　　　　　　(212) 587-0760